**United States Court of Appeals**

FOR THE EIGHTH CIRCUIT

_____

No.  97-2069

_____

Gloria Lane; Shirley Spalla; John   *
Lucas; Jan Slagle; Tommie Lillie;   *
Melanie Holsinger   *
  *
Plaintiffs - Appellants   *
  *
v.   * Appeal from the United States
  * District Court for the
Amoco Corporation; Amoco Oil   * Southern District of Iowa
Company; Amoco Credit Card Center   *
  *
Defendants - Appellees.   *
  *
  *
  *
  *
  *

_____

Submitted:  November 21, 1997
Filed:  January 13, 1998

_____

Before BOWMAN and MURPHY, Circuit Judges, and CONMY[1], District Judge.

_____

BOWMAN, Circuit Judge.

---

[1]The Honorable Patrick A. Conmy, United States District Judge for the District of North Dakota, sitting by designation.

Appellants, representatives of a certified class of former "at-will" employees of Amoco's credit card facility located in Des Moines, Iowa, appeal from an order of the District Court[2] granting summary judgment to Amoco on their claims for bonus payments for 1994. We affirm.

## I.

Beginning in 1993, appellants worked under a bonus program, the Amoco Variable Incentive Pay Program ("VIP Plan"), under which they were paid an annual cash bonus if the company met certain goals. The VIP Plan remained in effect for employees of the Des Moines facility until September 20, 1994, when the facility was sold to a third party. As a result of this sale, the employment relationship between appellants and Amoco was terminated, and appellants began working for the facility's purchaser.

Appellants contend that, because they worked for Amoco for nine months during 1994, they are entitled to receive a pro rata share of the bonus paid under the VIP Plan for 1994. Amoco disagrees, arguing that the plain language of the VIP Plan, a copy of which was distributed to each appellant at the time the Plan was instituted, provides that, to receive a bonus under the Plan, an employee is required to be "actively employed" by the company on the last day of the year for which benefits are sought.[3] According to Amoco, because none of appellants was an Amoco employee on December 31, 1994, none is eligible to receive a bonus payment for 1994.

---

[2]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

[3]Amoco's VIP Plan states in relevant part: "If you participate, you are eligible to receive a cash payout from the Variable Incentive Plan for a plan measurement period if: You are actively employed on the last day of the plan measurement period." Joint App. at 83. The "plan measurement period" is the calendar year. Id.

The District Court granted Amoco's motion for summary judgment finding that the "unambiguous" language of the VIP Plan required appellants to be employees of Amoco on the "allocation date" of December 31, 1994, in order to qualify for bonus payments under the Plan.  Joint App. at 384-85 (District Ct. Order).  The former employees appeal, arguing that this conclusion is contrary to Iowa law.[4]  We review de novo a district court's grant of summary judgment, see Blaise v. Fenn, 48 F.3d 337, 339 (8th Cir. 1995), as well as a district court's determination of state law, see Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

**II.**

Appellants argue that Amoco's unilateral act of selling the Des Moines facility prevented them from fulfilling the condition precedent of year-end employment necessary to receive benefits under the Plan, and that Iowa law provides that their failure to comply with the terms of the agreement should be excused.  Appellants rely on a number of Iowa cases to support their position.  Amoco argues that these cases are distinguishable primarily because each plaintiff in the cited cases had an "individually negotiated" employment contract which the employer subsequently breached.  Appellees' Br. at 6.  We conclude that the cases cited by appellants are distinguishable.  We therefore hold that the plain, unambiguous language of the VIP Plan requiring year-end employment for receipt of benefits should be enforced as written in accordance with Iowa law.  See Lange v. Lange, 520 N.W.2d 113, 117 (Iowa 1994) ("When a contract is not ambiguous, we are obliged to enforce it as written.").

---

[4]The parties agree that appellants' claim for benefits under Amoco's VIP Plan is not governed by ERISA, but is an issue of contract interpretation governed by Iowa law.

In _Dallenbach v. Mapco Gas Prods., Inc._, 459 N.W.2d 483 (Iowa 1990), the plaintiff sued for breach of contract alleging that his employer had wrongfully reduced his 1985 bonus. The employer announced in January 1986, that the plaintiff's bonus would be reduced retroactively for the reporting year of 1985. The court prevented the employer from unilaterally changing its previously announced bonus formula after the year in which the bonus was earned had ended and after the employee had performed his end of the bargain. The court also noted that Dallenbach originally was induced to accept the employment position by his employer's promise of a specifically-calculated bonus--a promise on which the employer could not later renege. Appellants argue that this case stands for the proposition that "[a] year-end bonus is _always_ an inducement to an employee to remain in the services of an employer, and should not be retroactively tampered with." Appellants' Br. at 22.

We disagree with appellants' characterization of the _Dallenbach_ decision, which in our view stands merely for the proposition that a bonus arrangement should be enforced according to its terms. Contrary to the facts in _Dallenbach_, appellants were not induced to accept new positions or new methods of salary computation by Amoco's promise of a bonus, and Amoco did not attempt to retroactively alter the terms of the VIP Plan.

Appellants also rely on _Kollman v. McGregor_, 39 N.W.2d 302 (Iowa 1949), in which an employer was required to pay its former employee a pro rata share of a bonus promised for a year's employment. The employee in _Kollman_ was working under a specific, one-year employment contract and was fired by his employer, without cause, after only eight months. The court in _Kollman_ required the employer to make the bonus payment because the employee had a one-year contract--"an agreement for a bonus for continuous service for a specified time." _Id._ at 304.

Again, appellants' reliance is misplaced. _Kollman_ is factually distinguishable from the present situation because the plaintiff was operating under a specific, one-year

employment contract and was not, as is the case here, an at-will employee. The existence of a durational employment contract, which is lacking in appellants' case, was crucial to the court's decision in <u>Kollman</u> and, consequently, the <u>Kollman</u> decision fails to bolster appellants' argument.

In <u>Hilgenberg v. Iowa Beef Packers, Inc.</u>, 175 N.W.2d 353 (Iowa 1970), the two plaintiffs were former hourly-paid employees who were induced individually by IBP into accepting supervisory positions with lower salaries based on promises by the company of year-end bonus payments. In October 1965, IBP sold the plant and refused to pay bonuses for the year 1965. The plaintiffs sought, and were awarded, a pro rata share of their 1965 bonuses based largely on IBP's "promise to pay a bonus as an inducement to accept different work and a different method and rate of payment." <u>Id.</u> at 356.

Because the employees in <u>Hilgenberg</u> were induced by the employer to accept new supervisory positions in part based on the employer's promises of year-end bonuses, this case is distinguishable from the present case. Appellants were not induced by promises made in the VIP Plan to alter their employment relationships with Amoco. The employer in <u>Hilgenberg</u> could not, in the circumstances presented, abrogate its individually-negotiated bonus arrangements with the employees who had agreed to become supervisors in reliance on the company's promise of year-end bonus payments. Amoco made no such promise to induce appellants to change their employment status.

In sum, we conclude that the cases cited by appellants fail to support their position and that Iowa law requires enforcement of the terms of the VIP Plan as written. <u>See</u> <u>Berryhill v. Hatt</u>, 428 N.W.2d 647, 654 (Iowa 1988). The District Court did not err in granting summary judgment to Amoco.

**III.**

We affirm the judgment of the District Court.

A true copy.

    Attest:

        CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT